# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

| | |
|---|---|
| In the Matter of the Search of<br>Information associated the mobile telephone<br>number 530-204-3205 that is stored at<br>premises owned , maintained, controlled, or<br>operated by Metro PCS, CURRENTLY<br>LOCATED AT 2250 Lakeside Blvd<br>Richardson, Texas 75082. | ) ) ) ) ) ) |

Case No.

JUL 3 0 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

**2 15 - SW - 0 4 2 6   DAD**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Northern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1470; 18 U.S.C. § 2251(a);<br>18 U.S.C. § 2422(b) | Transfer of Obscene Material to a Minor; Attempted Exploitation of a Minor;<br>Attempted Coercion and Enticement |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☐ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested
- ☐ under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

L. H. Jones
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **7/30/15**

*Judge's signature*

City and state:  Sacramento, California

Dale A. Drozd, U.S. Magistrate Judge
*Printed name and title*

# Affidavit In Support Of A Search Warrant

I, L. H. Jones, being duly sworn, depose and state:

1.      I am a Special Agent with the FBI, and have been for ten years.  I am currently assigned to the Sacramento Division of the FBI, Violent Crime Squad, where I investigate various federal crimes.  Since January 2010, I have been assigned to investigate federal computer crimes.  I have expertise in such investigations through training courses and everyday investigative work.  As part of my daily duties as an agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received training in the area of child pornography and child exploitation and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have attended numerous courses in the investigation of child sexual exploitation, child pornography, and online child sexual exploitation. In the course of my duties I have been the investigating officer and Affiant for numerous applications for search warrants relating to child pornography and other computer crime investigations.

2.      This affidavit is made in support of an application for a Search Warrant to Metro PCS (hereinafter "PROVIDER").  Based upon the information described below, there is probable cause to believe that evidence of production of child pornography in violation of 18, U.S.C.  § 2251, 2422(b), and 1470 are located in the incoming and outgoing text messages stored in the memory of any server maintained by Metro PCS, located at 2250 Lakeside Blvd Richardson, Texas 75082 (hereinafter "PROVIDER"), for the mobile telephone assigned the number 530-204-3205 on the dates at issue in this affidavit (hereinafter "SUBJECT ACCOUNT").

3.      Therefore, this Affidavit requests authority to search the business records maintained by Metro PCS for the content of wire and electronic communications, in particular incoming and outgoing text messages for the SUBJECT ACOUNT described in

Attachment A, and to seize the items listed and incorporated in Attachment B to this affidavit.

4.     This Court has jurisdiction to issue the requested warrant pursuant to 18 U.S.C. 2703(a) because it is a court with jurisdiction over the offense under investigation.

5.     Pursuant to 18 U.S.C. 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

6.     The purpose of this application is to seize evidence of violations of: 18 U.S.C. § 1470, which makes it a crime to use or attempt to use the mail or any facility or means of interstate commerce to knowingly transfer obscene matter to another individual knowing that such other individual has not obtained the age of 16; 18 U.S.C. § 2422(b), which makes it a crime to use the mail or any facility of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any illegal sexual activity; and 18 U.S.C.§ 2251, which makes it a crime to persuade, induce, entice any minor to engage in any explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of the conduct for which any person can be charged with a criminal offense, or an attempt to do so.

7.     I am familiar with the information contained in this Affidavit based upon the investigation I have conducted and based upon my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and child exploitation.

8.     Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, U.S.C. §1470, 2422(b), and 2251 are located in the SUBJECT ACCOUNT. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

## Information About Cellular Telephone

9.     Based on my training and experience, as well as the training, knowledge and experience of other law enforcement personnel involved in this investigation, I know the following:

a.     A cellular telephone is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These Capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files, storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.     Cellular telephones contain a digital camera function that records pictures as digital picture files, rather than by using photographic film. These cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the cellular telephone to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards. Cellular phones also include a screen for viewing the images.

c.     Your affiant knows based on my training and experience that an individual generally uses a cellular phone with recording capabilities, or some other similar electronic device to document or record the individuals encounters or contact with a minor child. Such storage devices are also likely to be a storage medium for evidence of a crime.

d.     Further, I know cellular telephones store voice mail messages, names, telephone numbers, addresses, sent and received text messages, and images on their digital memory.

e.    Based on my knowledge, training, and experience, I know that electronic devices, like the cellular phone, can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools.

## Information About Stored Wire and Electronic Communication

10.    In my training and experience, I have learned that Metro PCS is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for MetroPCS subscribers may be located on the computers of Metro PCS. Further, I am aware that computers located at Metro PCS contain information and other stored electronic communications belonging to unrelated third parties.

11.    Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of Metro PCS for weeks or months.

12.    Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Metro PCS for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

13.    Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or

multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

14.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

15.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and

times of payments and the means and source of payment (including any credit card or bank account number).

16.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

## Probable Cause To Search The Subject Account

17.     The FBI was contacted on 06/17/2015 by complainant, S.M. S.M. stated in part that a 12 year old boy living in her residence was contacted by an unknown individual using telephone number 530-204-3205 who identified himself as Jon (later identified as the defendant). At the time of the contact, the minor was playing a game on a cellular telephone belonging to the minor's father, K.A. K.A. took the phone back and started interacting via text messaging with Jon who initially claimed he was a 14 year old boy. K.A. pretended to be a 12 year old boy named Twist. In later text messages Jon said he was 33 years old. During the interaction between Jon and Twist, Jon asked Twist to send Jon a picture of Twist's penis and asked if Jon could engage in sexual activity with Twist.

18.     On June 25, 2015, the affiant traveled to the residence and, using a cellular phone extraction tool, downloaded all text messages between Jon and Twist. A final text message was sent to Jon telling him the phone was taken away from him by his mother and to no longer contact him there. Twist said he would re-contact Jon at a later point.

19.     On June 29, 2015, an undercover employee assumed the identity of Twist and, using an undercover cellular phone and TextNow application, sent a message to Jon. Twist claimed he was with the neighbor girl and informed Jon they were both 12 years of age. Jon asked to engage in sexual activity with Twist again and the conversation ended with Jon asking for both Twist and a girl to be involved or he wasn't interested.

20.     On July 2, 2015, Twist had another contact with Jon and Jon told Twist he would provide him with a video game in exchange for the phone number of the 12 year old neighbor girl. Immediately after the phone number was provided, Jon reached out to the

undercover employee, who now assumed the identity of the neighbor girl. Jon contacted the neighbor girl via text message, using telephone number 530-204-3205.

21.     From July 2 through July 7, the neighbor girl and Jon exchanged several text messages. Jon introduced himself as Twist's friend, and said he was 14. Jon then basically told the girl his dad is rich and he can buy her whatever she wants. The girl asked for a white iPhone.

22.     On July 7, 2015, at approximately 1:50pm an undercover phone call was made from the neighbor girl to Jon. In summary, Jon asked her if she could get out because he had her phone. The neighbor girl informed him she couldn't get out. Jon asked her what kind of panties she was wearing, if she had hair on her pussy, and if she had titties. Jon then asked her if she would send him a naked photo. The girl replied she was scared and he said no one would know but them. Jon told the girl to take off her shorts and pull down her panties. Jon asked her if she wants to see his penis and offered to send her a photo if she would send him a photo. The girl advised him she was scared and he continued to push the issue of sending a naked photo. Jon then asked the girl if she would suck his dick if he was there. She said she didn't know how so he asked her if she would just play with it. Jon then asked if he can play with the girl's vagina. She asked if it would hurt and he replied something along the lines of wanting to just perform oral sex on her. Jon then continued to pressure the girl to send him a naked photo of herself to him. The girl said she would try and the conversation ended.

23.     Immediately after the phone conversation ended, Jon texted "Can I fuck u" at approximately 1:55pm. Then Jon asked how big the girl's tits were and began asking for pictures, texting "Can I get a pic of u," "Can I eat u our," "Send pic of u please" in rapid succession. When asked to clarify what "eat u our" meant, Jon replied, "Can I eat u out and suck on or tits." At approximately 2:12pm, he texted, "Ok love usou for real."

24.     Jon and the neighbor girl continue to text over the next few days and Jon asks about her panties and if she wants the phone he bought for her. The girl reiterates she is 12 years old and Jon continues to ask for naked photos. Clothed pictures of both Jon and the neighbor girl are exchanged. Jon texted, "Are u going to send me that panties and bra pic" after asking what the girl was wearing. Then he asks the girl "Take or shorts off when she lives" and "Talk drity and play" as instructions for when the girl's mother leaves.

25.     On July 10, 2015, at approximately 12:18pm, an undercover phone call was made between the neighbor girl and Jon. In summary, Jon said he was lying in his bed and asked her if she could get out, she said she could not. She said she might be able to get out next week and they said maybe they could meet on Tuesday. Jon asked her to wear a dress and she said she just had skirts. Jon asked her take off her shorts and panties then he proceeded to tell her to spread her legs and touch her pussy. He specifically told her to stick a finger in her pussy and move it around faster. Jon said he would jack off (masturbate) for the girl. He encouraged her to keep masturbating. Jon asked her to cum for him and said he wished he was there with her. The cellular phone call was plagued with a bad signal which cut in and out and then ended.

26.     A second call was made and Jon asked for a picture of the girl's vagina with her legs spread. He told her to get a good picture and then the conversation ended. Here are the texts that followed:

| 7/10/2015 7:27:52 PM(UTC+0) | From: +15302043205 | Send naked pic I will after u |
|---|---|---|
| 7/10/2015 7:28:04 PM(UTC+0) | From: +15302043205 | I sware come on |
| 7/10/2015 7:28:38 PM(UTC+0) | From:+15302043205 | Please |
| 7/10/2015 7:29:32 PM(UTC+0) ' | To: +15302043205 | U first, I'm scared |
| 7/10/2015 7:30:21 PM(UTC+0) ' | From:+15302043205 | Dont be I sware I will after or do u sware u will after me |
| 7/10/2015 7:30:45 PM(UTC+0) | To: +15302043205 | Did u hang up with me? I couldn't hear u anymore |
| 7/10/2015 7:31:32 PM(UTC+0) " | From: +15302043205 | No I lost drop so yes no will u |

| 7/10/2015 7:32:08 PM(UTC+0) | To: +15302043205 | Wat kind of pic |
|---|---|---|
| 7/10/2015 7:33:03 PM(UTC+0) | From: +15302043205 | Pussy pic for dick pic |
| 7/10/2015 7:33:39 PM(UTC+0) | To: +15302043205 | U firsr? |
| 7/10/2015 7:36:43 PM(UTC+0) | From:15302043205 To: 9162549257 | Do u like |
| 7/10/2015 7:36:51 PM(UTC+0) | From:15302043205 | **This text contained a close- up image of a penis with what appeared to be a male's left hand underneath the penis.** |
| 7/10/2015 7:38:57 PM(UTC+0) | From: +15302043205. | Good one of or pussy |
| 7/10/2015 7:39:05 PM(UTC+0) | From:+15302043205 | Come on real fast |

27.     The girl then claimed that a neighbor walked into the house and she had to delete the pictures and texts off her phone. Jon and the girl then discuss meeting, and Jon says he will bring a condom and lube.

28.     The girl and Jon did not talk on July 11, 2015 PST. They texted again on July 12, 2015, when the girl said she had gone camping for the weekend and just got home. At approximately 4:32pm, in response to the text, "Just excited 2 c u," Jon texted "Ok then go in bathroom send me pic they wont no or going pee" and then "Please if u love me just u in or panties and bra." At approximately 7:46pm, Jon texted, "What kind of pic u sending me" and when the girl responded "Idk, I have to get away from my mom," he replied, "Naked one or panties and bra." A minute later, he texted "Or I make a deal with u/ Two cell numbers of girls or age or naked pic of u."

29.     On July 13, 2015, the defendant claimed during a phone call with the neighbor girl that he wanted to meet up with the neighbor girl when she went for a walk to a neighborhood school. He claimed that he would bring earrings and the phone. Jon asked if they could lay down in the back of his van. Then he asked the neighbor girl to take off her shorts. He also asked, "wanna fuck?" Then he offered to bring condoms so she doesn't get pregnant. Jon then told the neighbor girl that it (sex) would hurt at first, and that she would bleed a little bit. Jon also asked if he could take pictures of her. The phone then dropped the connection. After some more back and forth texts, where Jon claimed that he could be at the school in fifteen minutes, the neighbor girl claimed that her grandmother fell and she was on the phone with her mom, to which Jon replied, "Go head I see u to morrow for movie." But when the neighbor girl refused to provide him with a bra and panty picture, Jon broke off communication.

30.     On June 30, 2015, an administrative subpoena was issued to Metro PCS for the subscriber information belonging to telephone number 530-204-3205. The returned subscriber information was: Justin Christensen, 530 Johnston St, Ste 2 Woodland, CA 95776

31.     In addition to subscriber information, Metro PCS returned the number of incoming and outgoing text messages and phone calls. From February 15, 2015 through June 21, 2015, telephone number 530-204-3205 sent and/or received approximately 31,179 text messages. From August 4, 2014 through June 30, 2015, telephone number 530-204-

3205 placed and/or received approximately 14,561 phone calls. Metro PCS sent information regarding the physical cellular telephones associated with 530-204-3205. Starting on January 15, 2015, two cellular telephones, an ALC Evolve 2 Black TMUS Kit and a Samsung R360 Freeform II, both using the same ICCID (GSM sim card) have been linked to the account.

32.     On July 16, 2015, Special Agent Jones obtained a federal search warrant at 530 Johnston Street, Unit 2, Woodland, California, signed by the Honorable Magistrate Judge Newman. This warrant authorized a search of the residence and any computer devices located there for evidence of violations of 18 U.S.C. § 1470, which makes it a crime to use or attempt to use the mail or any facility or means of interstate commerce to knowingly transfer obscene matter to another individual knowing that such other individual has not obtained the age of 16;18 U.S.C. § 2422(b), which makes it a crime to use the mail or any facility of interstate or foreign commerce to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in prostitution or any illegal sexual activity; and 18 U.S.C.§ 2251, which makes it a crime to persuade, induce, entice any minor to engage in any explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of the conduct for which any person can be charged with a criminal offense, or an attempt to do so. Two cellular telephones were seized pursuant to this warrant.

33.     Special Agent Jones and Detective James Williams served this warrant and contacted the SUBJECT and Christopher Christensen at the residence. During a Mirandized statement, the SUBJECT initially denied any communication with the neighbor girl (referred to as UCE), Christensen later admitted to communicating with her. The SUBJECT stated, in summary:

34.     Christensen was texted by "Twist" and "Twist" gave Christensen the phone number for the UCE. Christensen texted the UCE and began texting back and forth with her, knowing that she was a 12 year old girl. Christensen also spoke with the UCE over the telephone, but does not recall having her masturbate with him on the phone. Christensen asked the UCE to send him pictures, including pictures of the UCE's genital area exposed. Christensen said that he sent the UCE a photograph of himself and then received a photograph of the UCE, which was sent by the UCE. Christensen then sent the UCE a

picture of his penis. Christensen confirmed that the cargo shorts and shoes that were depicted in the image were his and that he took the photograph in the bathroom of his residence.

35.     Christensen also admitted to communicating with the UCE in regards to meeting on Monday, July 13, 2015 but stated that he had no intention of actually meeting with the UCE. Christensen stated he did not have any transportation. Christensen confirmed he asked the UCE several times to take pictures of her genital area and send them to him.

36.     Christopher Christensen also provided a voluntary statement and said the SUBJECT would be on his phone constantly texting. Christopher said he previously worked for Marshall's and back around 2011 -2013, his co-workers would tell him the SUBJECT had sent them naked pictures and sexual text messages. Christopher claimed he paid the cellular phone bill for 530-204-3205 but the SUBJECT was the one who used the phone

37.     On July 17,2015, California Highway Patrol Investigator George Vasiliou performed a data recovery on the SUBJECT'S cell phones that were seized during the search in order to examine it for violations of 18 U.S.C. §§1470, 2251 and 2422(b). Logical and file system extractions were conducted. Investigator Vasiliou found a picture on the ALC telephone that appeared to be the same picture with his daughter which was sent to the UCE as stated above. Most of the text messages in the phone were found to have been deleted.

38.     Based upon the conversation above, I believe that evidence regarding sending obscene material to a minor, production of child pornography, and enticement of a minor to engage in a sexual act will be found stored in the text messages of the cellular phone. This evidence may include the messages between the SUBJECT and the UCE, as well as messages between the SUBJECT and additional underage females. As explained above, I know from my training and experience, as well as the training and experience of others, that cell phones and text messaging are common methods of communication for people who sexually exploit children.

39.     I know that Metro PCS, the carrier for the mobile telephone, keeps text messages for a few months. A preservation letter was sent to Metro PCS for the SUBJECT ACCOUNT in order to preserve the text messages pending a search warrant.

40.     For these reasons, I believe that there is probable cause to believe evidence of a crime in the server memory associated with the mobile telephones, described in Attachment A, and that evidence is more fully described in Attachment B.

41.     Therefore, based upon this Affidavit, I respectfully request authority to search the business records maintained by Metro PCS, located at 2250 Lakeside Blvd Richardson, Texas 75082, for the content of wire and electronic communications, in particular incoming and outgoing text messages, for the mobile telephone 530-204-3205.

## Location To Be Searched And Things To Be Seized

42.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Metro PCS to disclose to the government copies of the records and other information (including the content of communications) identified in Attachment A for the items described in Attachment B.

## Scope Of Search

43.     I know from my training and experience that the complete contents of text message accounts may be important to establishing the actual user who has dominion and control of particular phone at a given time. Cell phones may be subscribed to under false names with little to no verification by the service provider. They may also be used by multiple people. Given the ease with which cell phones may be obtained under aliases, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of a particular cell phone that was used to send a particular text message, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular cell phone. Only by piecing together information contained in the contents of an account may an investigator establish who was the actual user of a cell phone. Often those pieces will come from a time period before the cell phone was used in the criminal activity. Limiting the scope of the search for information showing the actual user of the cell phone

would, in some instances, prevent the government from identifying the user of the cell phone and, in other instances, prevent a defendant from suggesting that someone else was responsible. Therefore, the content of a given cell phone user's account often provides important evidence regarding the actual user's dominion and control of a particular cell phone. For the purpose of searching for text messages demonstrating the actual user of the cell phone, I am requesting a warrant requiring the PROVIDER to turn over all of the text messages sent and received by SUBJECT ACCOUNT for a reasonable period extending beyond the time periods described above. In this case, the government seeks to examine all text messages sent and received in the 60 days prior to the service on the PROVIDER of the preservation letter.

44.     Relatedly, to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the government must be allowed to seize and review the contents of an account including text messages sent or received by the SUBJECT ACCOUNT prior to the dates described above to determine whether other individuals had access to the account. If the government were constrained to review only a small portion of a cell phone users text messages, that small subsection might give the misleading impression that only a single user had access to the account.

45.     I also know based on my training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as lol to express "laugh out loud"), or code words (which require entire strings or series of text message conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a text message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and closed parenthesis :) to convey a smile or agreement) to discuss matters. "Keyword searches" or other automated methods of review of the text messages sent to and from the SUBJECT ACCOUNT would not account for any of these possibilities, so actual review of the text messages by law enforcement personnel with information regarding the identified criminal activity is necessary to find all relevant evidence within the account.

46.     I am requesting a warrant that permits the seizing agency to keep the original production from the PROVIDER until the investigation is completed and, if a case is brought, that case is completed through disposition, trial, appeal, or collateral proceeding. I make that request for preservation of the original evidence for several reasons:

a.  Should an issue arise as to authenticity, it might be impossible for the PROVIDER to authenticate information taken from the account as its business record without the original production to examine.  Even if the PROVIDER kept an original copy at the time of production (against which it could compare the results of the filter team's search at the time of trial), the government cannot compel the PROVIDER to keep a copy for the entire pendency of the investigation and/or case.  If the original production is destroyed, it may be impossible for the PROVIDER to examine a particular document found by the filter team and confirm that it was a business record of the PROVIDER's relating to the SUBJECT ACCOUNT.

b.  I also know from my training and experience that many cell phone services provider records are purged as part of the ordinary course of business.  In this case, as described above, absent a request for preservation, Metro PCS deletes text messages from their system of records after 60 days.  As a consequence, there is a risk that the only record of text messages sent to or from the SUBJECT ACCOUNT might by the production that a PROVIDER makes to the government.  Preserving evidence would, therefore, ensure that the government can satisfy its Brady and other discovery obligations and give the defendant access to evidence that might be used in his or her defense.

## Files and Accounts to be Copied by the Provider's Employees

47.     The PROVIDER will provide the following in accordance with this search warrant:

c.  All text messages relating to the mobile telephone 530-204-3205 ("the SUBJECT ACCOUNT"), for the 60 days prior to the receipt by Metro PCS of a request for preservation, up through and including the date of this search

warrant, including received messages, sent messages, deleted messages, and messages maintained in trash or other folders;

d. All existing printouts from original storage of all of the text messages described above in subparagraph (a) above;

e. All transactional information of all activity of the SUBJECT ACCOUNT described above in subparagraph (a) above, including sent and received dates and times;

f. All business records and subscriber information, in any form kept, pertaining to the SUBJECT ACCOUNT described above in subparagraph (a) above, including applications for service, subscribers' full names, all aliases or screen names associated with the subscribers and/or SUBJECT ACCOUNTS, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing records; and

g. All records indicating the services available to subscribers of the SUBJECT ACCOUNT described above in subparagraph (a) above.

## Information to be Seized by Law Enforcement Personnel

48.     Evidence and fruits of violations of 18 U.S.C. § 1470, 2422(b), and 2251 will be seized by law enforcement from the text messages sent to or from the SUBJECT ACCOUNT upon receipt of the information from the PROVIDER as described above as follows:

a. The contents of text messages, including attachments and stored files, for the SUBJECT ACCOUNT, including received messages, sent messages, deleted messages, messages maintained in trash or other folders –

    i. tending to demonstrate the actual user(s) of the SUBJECT ACCOUNT;

    ii. the contents of electronic communications, including text messages, that were placed or stored in the PROVIDER's system of business records relating to mobile 530-204-3205 ("the SUBJECT ACCOUNT"), for the 60 days prior to the receipt by Metro PCS of a

request for preservation, up through and including the date of this
search warrant; and

    iii.  information necessary for establishing the context (as described
above) of the contents described above in subparagraph (ii) above.

49.    All of the records and information described above including:

    a.  Account information for the SUBJECT ACCOUNT including:

    b.  Names;

    c.  Physical address and location information;

    d.  Records of text messages sent and received times and dates;

    e.  Length of service (including start date) and types of service utilized;

    f.  The means and source of payment for such service (including any credit
card or bank account number); and

    g.  Other telephone or instrument numbers or other subscriber number or
identity, related to the means and source of payment identified in
subparagraph (f) above.

50.    I ask that the Court order the PROVIDER to deliver the information set
forth above within 10 days of the service of this warrant and that the PROVIDER send the
information via facsimile, email, and/or United States mail to the affiant.

## CONCLUSION

51.    Based upon the above information, there is probable cause to believe that
Title 18,  U.S.C. § 1470, which makes it a crime to use or attempt to use the mail or any
facility or means of interstate commerce to knowingly transfer obscene matter to another
individual knowing that such other individual has not obtained the age of 16; 18 U.S.C. §
2422(b), which makes it a crime to use the mail or any facility of interstate or foreign
commerce to knowingly persuade, induce, entice, or coerce any individual who has not
attained the age of 18 years, to engage in prostitution or any illegal sexual activity; and 18
U.S.C.§ 2251, which makes it a crime to persuade, induce, entice any minor to engage in
any explicit conduct for the purpose of producing any visual depiction of such conduct or
for the purpose of transmitting a live visual depiction of the conduct for which any person
can be charged with a criminal offense, or an attempt to do so, has been violated, and that

property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located in the SUBJECT ACCOUNT. This Affiant requests authority to seize such material.

      52.     Based upon the foregoing, this Affiant respectfully requests that this Court issue a search warrant for the SUBJECT ACCOUNT, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.


L. H. Jones
Special Agent
Sacramento Federal Bureau of Investigation

Approved as to form.


ROGER YANG
Assistant United States Attorney

Subscribed and sworn to before me this
__30__ day of July 2015


Dale A. Drozd
United States Magistrate Judge
Eastern District of California
Sacramento, California

## **Attachment A**

The location to be searched is more fully described as follows:

Information associated the mobile telephone number 530-204-3205 that is stored at premises owned , maintained, controlled, or operated by Metro PCS, at 2250 Lakeside Blvd Richardson, Texas 75082, Fax Number 972-860-2635.

**Attachment B**

**Items to Be Seized**

Information to be disclosed by Metro PCS

To the extent that the information described in Attachment A is within the possession, custody, or control of Metro PCS, Metro PCS is required to disclose the following information to the government for the mobile telephone numbers listed in Attachment A

All text messages relating to the mobile telephone number 530-204-3205 ("the SUBJECT ACCOUNT"), for the 60 days prior to the receipt by Metro PCS of a request for preservation, up through and including the date of this search warrant, including received messages, sent messages, deleted messages, and messages maintained in trash or other folders;

a. All existing printouts from original storage of all of the text messages for mobile telephone number 530-204-3205;

b. All transactional information of all activity of the SUBJECT ACCOUNT described above in subparagraph a, including sent and received dates and times;

c. All business records and subscriber information, in any form kept, pertaining to the SUBJECT ACCOUNT described above in subparagraph a, including applications for service, subscribers' full names, all aliases or screen names associated with the subscribers and/or SUBJECT ACCOUNT' accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing records; and

d. All records indicating the services available to subscribers of the SUBJECT ACCOUNT described above in subparagraph a.

/////

/////

305B-SC-6469334                                          19

Information to be Seized by Law Enforcement

Evidence and fruits of violations of 18 U.S.C. § 1470, 2422 (b), and 2251 will be seized by law enforcement from the accounts associated with the SUBJECT ACCOUNT upon receipt of the information from the PROVIDER as follows:

   a. The contents of text messages, including attachments and stored files, for the SUBJECT ACCOUNT, including received messages, sent messages, deleted messages, messages maintained in trash or other folders described above in subparagraphs (a) and (b) –

      i. tending to demonstrate the actual user(s) of the SUBJECT ACCOUNT;

      ii. the contents of electronic communications, including text messages, videos, or digital pictures that were placed or stored in the PROVIDER's system of business records relating to mobile telephone number 530-204-3205 ("the SUBJECT ACCOUNT"), for the 60 days prior to the receipt by Metro PCS of a request for preservation, up through and including the date of this search warrant; and

      iii. information necessary for establishing the context (as described above) of the contents described above in subparagraph (a)(ii).

   b. All of the records and information described above in subparagraphs (c), (d), and (e), including:

      i. Account information for the SUBJECT ACCOUNT including:

         1. Names;

         2. Physical address and location information;

         3. Records of text messages sent and received times and dates;

         4. Length of service (including start date) and types of service utilized;

         5. The means and source of payment for such service (including any credit card or bank account number); and

6.  Other telephone or instrument numbers or other subscriber
    number or identity, related to the means and source of payment
    identified in subparagraph (5) above.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>Information associated the mobile telephone number )<br>530-204-3205 that is stored at premises owned , )<br>maintained, controlled, or operated by Metro PCS, )<br>CURRENTLY LOCATED AT  2250 Lakeside Blvd )<br>Richardson, Texas 75082.  ) | Case No.<br><br>**2 15 - SW - 0 4 2 6**    **DAD** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

   An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the    Northern    District of    Texas
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

   I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

   **YOU ARE COMMANDED** to execute this warrant on or before    August 13, 2015    *(not to exceed 14 days)*
 ☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

   Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

   The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

 ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
 ☐ for    days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of      .

Date and time issued:    7/30/15 @ 11:38 a.m.     *Dale A. Drozd*
                         *Judge's signature*

City and state:    Sacramento, California        Dale A. Drozd, U.S. Magistrate Judge
                            *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____                        _____
Signature of Judge                                            Date